979.  JOHNSON *v.* WESTERN & ATLANTIC RAILROAD
COMPANY *et al.*

1. In the absence of a contract assuming liability therefor, tenants ordinarily are not liable for repairs. And as pleadings are to be construed most strongly against the pleader, there was no error in sustaining the general demurrer and dismissing the plaintiff's petition as to all of the defendants, except the Western & Atlantic Railroad Company.

2. One who employs an independent contractor to do work upon his premises, and who places his property in the charge of the independent contractor, for the purposes of the work, is not, generally, liable for injuries resulting to the contractor's servants engaged in the work, or to others. Especially is this true where the employment of the independent contractor is for the purpose of making repairs, and where, for this reason, the work is necessarily and obviously dangerous.

3. Even where an independent contractor is employed to make repairs, the employer may become liable for injuries sustained by a servant of the independent contractor, either on account of his own wrongful act or by interfering and assuming control, so that an injury results which is traceable to his interference.

4. The petition of the plaintiff in the court below, while subject to special demurrer, sufficiently set forth a cause of action against the Western & Atlantic Railroad Company to withstand a general demurrer, ·and· it was error to dismiss the petition as to this defendant.

Action for damages, from city court of Atlanta—Judge Reid. January 6, 1908.

Argued March 11,—Decided March 30, 1908.

Ellen C. Johnson sued the Western & Atlantic Railroad Company and other railroad companies jointly for damages on account of the death of her son. The petition in substance alleged : The Western & Atlantic Railroad Company is the lessee of the property of the State generally called the "State Road." The depot or station hereinafter referred to is a part of the said "State Road." As lessee as aforesaid, said depot passed to the Western & Atlantic Railroad Company under the terms of the lease act. All of the defendants were jointly in possession of said depot and were occupying and using it. It has been in such possession and so occupied and used for one or more years. Defendants had contracted for the repair of said depot building, and petitioner's son was upon the building, assisting in the repairs. He had been placed upon the building by the party or parties who had contracted for the repairs. By reason of the facts stated; he was rightfully upon the building. He was engaged in removing and repairing parts of the corrugated-iron roof of the building, and his work did not call him under the roof, and he had been at no place where the condition of the iron could be seen. Defendants instructed him and others engaged. in the work to be careful to save as much of the iron as possible. Defendants specially informed them that that part of the iron towards Central Avenue was sound and all right. It was on that part of the building that he met his death. He was walking on the top of the said building, along Central Avenue, in the discharge of his duties, when a sheet of iron gave way and precipitated him from the roof of the building, causing his death. He fell upon a pile of sand or the floor of the building and was killed. Under the terms of the lease act, it was the duty of the Western & Atlantic Railroad Company to keep the said road in the condition of first-class roads in Georgia. By joining in the possession and occupancy of said depot, all the other defendants assumed liability for failure to keep the said road in the condition of first-class roads in Georgia. This the defendants failed to do. Such failure was negligence on the part of the defendants. In violation of their duty to the State and in violation of the general rules of ordinary care, defendants had permitted the entire depot, including the roof, to be in a dilapidated and unsafe condition. This was negligence on the part of defendants. The sheet on which he was gave way because the rivets fastening it to the adjoining sheet, and

the adjoining sheet itself, were rotten. They were rotten under-neath and did not show their defects from the top. He was killed by the negligence of the defendants. Defendants negligently per-mitted him to work, with their approval, at an unsafe place. De-fendants negligently pointed out to him an unsafe place to work. Defendants knew, or by the exercise of ordinary care could have known, of the defective condition of the said iron sheet and rivets. The said sheet and rivets had been in a defective condition for many months. Defendants were in possession and control of said depot and depot premises and operating the same by lease or other-wise. The repairs on the same were being done at their expense and for their benefit. Petitioner's son was 27 years old and unmarried, was earning $4 a day, and could have continued to earn that sum permanently; he contributed to her support and she was substan-tially dependent on him, and she sues for the full financial value of his life. Damages are laid at $20,000. In a second count it is alleged, that the petitioner's son was, at said time and place, at work on said building with the knowledge and approval and by the invitation of defendants, but was not an employee of defendants.

Each of the defendants demurred generally and specially. The court did not pass on the special grounds of demurrer, but sus-tained the general demurrers and dismissed the petition, holding, that, according to its allegations, the defendants owed no duty to the plaintiff's son; that he was the employee of an independent contractor, at whose instance he went on the premises, and must look to his employer alone for a safe place to work. The plaintiff excepted to this judgment, and to the failure to overrule the special demurrers.

*Burton Smith*, for plaintiff.

*Tye, Peeples, Bryan & Jordan, Brown & Randolph, Joseph B. & Bryan Cumming, McDaniel, Alston & Black*, for defendants.

RUSSELL, J. 1. The court did not err in dismissing the peti-tion as to defendants alleged to be tenants of the building under repair. Pleadings must always be construed most strongly against the pleader. Applying this rule, we think that the court properly sustained the general demurrers as to the Atlantic Coast Line Rail-road Company, the Louisville & Nashville Railroad Company, and the Seaboard Air-Line Railway. It could not only be inferred from the petition that these defendants were tenants in the building

which was being repaired, but it is in fact expressly stated that the depot was in the possession and control of the Western & Atlantic Railroad Company, which, it is alleged, was bound by the terms of its lease to keep it in repair.  As tenants ordinarily are not responsible for repairs, and as, under the rule of construction to which we have above referred, it must be assumed that the plaintiff's son was employed by an independent contractor, who was to repair the roof of the old depot for the Western & Atlantic Railroad Company, there could be no liability, in any view of the case, on the part of any of the defendants, except the Western & Atlantic Railroad Company.

2.  Assuming that the deceased was the servant of an independent contractor,—as we must, upon review of the allegations of the petition,—there would be no liability as to this defendant, except for the allegations contained in the 16th and 54th paragraphs of the petition.  One who employs an independent contractor to perform a work is not, generally, liable for injuries resulting to the servants engaged in the work.  But these paragraphs (when construed with the petition as a whole, and especially when viewed in connection with the paragraph immediately preceding and the two paragraphs immediately following each of them), in our judgment, cause the petition to set forth a cause of action sufficient to withstand a *general demurrer*.  The paragraphs to which we refer are as follows:  (15)  "Defendants instructed petitioner's son and others engaged in said work to be careful to save as much of the iron as possible.  (16)  Defendants specially informed them that that part of the iron towards Central Avenue was sound and all right.  (17)  It was on the part of the building described in the preceding paragraph that petitioner's son met his death."  And the 53d, 54th, and 56th paragraphs, which are embraced in a second count, embody practically the same language.  The defendant could not admit these allegations and escape liability.  If the defendant had turned the building over to an independent contractor to be repaired, why did it interfere with the contractor's servants?  If the defendant, being one who was responsible for the repairs of the depot, and having let a contract for the roofing to an independent contractor, directed one of the contractor's servants to do certain work for the benefit of the owner (or, in this case, the lessee for a term of years), and, without being chargeable in any

way for the safety of such an employee, instructed him that a certain portion of the roof was safe, and thereby caused him to omit the use of that caution which the employee otherwise might have exercised in the dangerous business in which he was engaged, and directly or indirectly caused such employee's injury or death, he thereby put himself ad hanc vicem in the shoes of the independent contractor, who was the master.

3. The case, under the allegations of the petition, would fall under the second subdivision of the fifth paragraph of §3819 of the Civil Code. For an owner to interfere and assume control, so that an injury results which is traceable to his interference, renders him liable, in this State, although, but for his interference, he might have been free from liability, under the provisions of §3818 of the Civil Code,—by reason of the fact that the servants of the independent contractor were not subject to his immediate control and direction. See *Atlanta R. Co.* v. *Kimberly*, 87 *Ga.* 168 (13 S. E. 277, 27 Am. St. R. 231); 1 Lawson's Rights, Rem. & Prac. §299; *Savannah R. Co.* v. *Phillips*, 90 *Ga.* 834 (3), (17 S. E. 82). The petition alleges that "Defendants instructed petitioner's son, and others engaged in said work, to be careful to save as much iron as possible." And there are other allegations in the petition which (considered in connection with this) naturally and properly raise the inference that, but for the interference of the defendants, the casualty which resulted in the death of the plaintiff's son would not have occurred. If the plaintiff proves her allegations (amplified to meet the special demurrers) the Western & Atlantic Railroad Company voluntarily assumed the duty, which was upon the independent contractor, of furnishing the deceased servant a safe place to work, and really undertook to safeguard the servant to a greater degree than the law requires his master to do under the circumstances.

4. We think, therefore, the court erred in sustaining the general demurrer and dismissing the petition, in so far as it related to the Western & Atlantic Railroad Company. The court expressly declined to pass upon the special demurrers. The paragraphs to which we have referred are open to special demurrer. As a corporation can act only through its agent, the defendant would have the right to know which of its agents gave the direction and information contained in the 15th and 16th paragraphs and in the

53d and 54th paragraphs. And it would have to appear that the agent or servant of the corporation was one with sufficient authority to bind the corporation in its behalf, and that the interference was within the scope of the authority of such agent. But in the absence of such special demurrer, or where, as in this case, such special demurrer has not been sustained, the statement of these specific points must, for the purposes of our consideration, be deemed to be waived; and the statement made by the plaintiff is sufficient for the purpose of a trial.

*Judgment affirmed in part, and reversed in part.*